IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

_____
                                        )
FEDERAL TRADE COMMISSION and            )
STATE OF MAINE,                         )
                                        )  Case No.
        Plaintiffs,                     )
                                        )
        v.                              )  **COMPLAINT FOR PERMANENT**
                                        )  **INJUNCTION AND OTHER**
ANTHONY DILL, STACI DILL,               )  **EQUITABLE RELIEF**
DIRECT ALTERNATIVES,                    )
and ORIGINAL ORGANICS LLC,              )
                                        )
        Defendants.                     )
_____ )

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Maine, for their

Complaint allege:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain permanent injunctive relief, rescission or

reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten

monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a)

and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and the Electronic Fund Transfer Act

("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 1005.10,

in connection with the labeling, advertising, marketing, distribution, and sale of purported

weight-loss products.

2.      The State of Maine brings this action under the Maine Unfair Trade Practices Act,

ME. REV. STAT. tit. 5, §§ 205-A through 214  ("Maine UTPA"), to permanently enjoin and

restrain Defendants from engaging in certain unlawful unfair and deceptive acts or practices in the conduct of trade or commerce, and to obtain relief for Defendants' acts or practices in violation of the Maine UTPA in connection with the labeling, advertising, marketing, distribution, and sale of purported weight-loss products, such relief to include rescission or reformation of contracts, the refund of monies paid, disgorgement, restitution, civil penalties, other relief as provided in the Maine UTPA, and other equitable relief.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1607(c), and over the claims of the State of Maine pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b), (c), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

5.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.

6.      Pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the FTC is authorized to initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

7.     Plaintiff State of Maine is one of fifty sovereign states of the United States.  Janet T. Mills is the duly elected and qualified Attorney General acting for Plaintiff State of Maine and is authorized to enforce the Maine UTPA pursuant to ME. REV. STAT. tit. 5, §§ 191 and 209 and the powers vested in her by common law.

8.     This Court has supplemental jurisdiction over Plaintiff State of Maine's claims under 28 U.S.C. § 1367.

## THE DEFENDANTS

9.     Defendant Anthony Dill is the owner, sole director, manager, and chief executive officer of Direct Alternatives and Original Organics LLC.  At all times material to this Complaint he has identified his primary place of business as 165 Pleasant Avenue, South Portland, Maine 04106.  In addition, he has done business at 551 Congress Street, Suite A, Portland, Maine  04101.  At all times material to this Complaint, acting alone or in concert with others, including Staci Dill, Anthony Dill has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Direct Alternatives and Original Organics LLC, including the acts and practices set forth in this Complaint.  In connection with the matters alleged herein, he transacts or has transacted business in this District and throughout the United States and Canada.

10.     Defendant Staci Dill, together with her husband, Anthony Dill, takes part in the management of Defendants Direct Alternatives and Original Organics LLC.  At all times material to this Complaint, acting alone or in concert with others, including Anthony Dill, Staci Dill has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Direct Alternatives and Original Organics LLC, including the acts and practices

set forth in this Complaint.  In connection with the matters alleged herein, she transacts or has transacted business in this District and throughout the United States and Canada.

11.     At all times material to this Complaint, Defendant Direct Alternatives, a Maine company, has identified its principal place of business as 165 Pleasant Avenue, South Portland, Maine 04106 and has done business at 551 Congress Street, Suite A, Portland, Maine 04101. Direct Alternatives markets dietary supplements and weight-loss products, including AF Plus and Final Trim.  At all times material to this Complaint, acting alone or in concert with others, Direct Alternatives has labeled, advertised, marketed, distributed, or sold these purported weight-loss products in this District and throughout the United States and Canada.

12.     At all times material to this Complaint, Defendant Original Organics LLC ("Original Organics"), a Maine company, has identified its principal place of business as 165 Pleasant Avenue, South Portland, Maine 04106 and has done business at 551 Congress Street, Suite A, Portland, Maine 04101.  Original Organics markets dietary supplements and weight-loss products, including AF Plus and Final Trim.  At all times material to this Complaint, acting alone or in concert with others, Original Organics has labeled, advertised, marketed, distributed, or sold these purported weight-loss products in this District and throughout the United States and Canada.

## COMMERCE

13.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 and as "trade and commerce" are defined in Section 206(3) of the Maine UTPA, ME. REV. STAT. tit. 5, § 206(3).

## DEFENDANTS' BUSINESS ACTIVITIES

14.     Beginning on or before January 1, 2012 and continuing to present, Defendants have employed unfair or deceptive marketing tactics in the advertising, marketing, distribution, and sale of purported weight-loss products, including AF Plus and Final Trim.  Defendants sell these products directly to consumers, predominantly through radio advertising nationwide and in Canada, which has garnered in excess of $16 million in gross sales.  In the course of selling these products, Defendants have made unauthorized charges to consumers' credit and debit cards.

### AF PLUS ADVERTISING

15.     One bottle of AF Plus sells for approximately $39.95 and contains 30 capsules.  It is usually sold as part of a minimum order of two bottles for $79.90.  The recommended serving size is one capsule per day.  AF Plus contains a proprietary blend that includes 750 mg of:

- Acai fruit extract (*Euterpe oleracea*)
- Green tea leaf extract (98% polyphenols, 75% catechins, 45% EGCG, 150mg caffeine)
- *Panax ginseng* root extract (4% ginsenosides)
- Pomegranate fruit extract (20% ellagic acid)
- Amla fruit extract

16.     One of the radio advertisements for AF Plus begins with a voiceover asking "Do you want to lose 10 pounds?  How about thirty, or even fifty pounds?"  A purported company spokesperson then claims that "when we created this once daily weight loss capsule, we had no idea it would work THIS well," and describes AF Plus as a "proven breakthrough in weight loss."  Exhibit A, p. 1.

17.     In another radio advertisement, the purported company spokesperson states "Hi, I'm Stacey Howard with AF Plus.  I've lost a ton of weight with AF Plus, and now you can too."  This character is fictitious, as are her reported experiences.  Exhibit A, p. 2.

18.     Defendants' radio advertisements for AF Plus claim that "AF Plus is an amazing PROVEN breakthrough in weight loss," Exhibit A, pp. 2-3, and "this product is proven and can cause dramatic weight loss."  Exhibit A, p. 4.

19.     Many of Defendants' radio advertisements for AF Plus claim that users lose pounds in days, and as much as 30 pounds or more.  Exhibit A, pp. 1-5.

20.     An Interactive Voice Recording ("IVR") that Defendants used to take customer orders claims "[AF Plus is] so powerful, it even works while you sleep!" and "With the metabolism-boosting benefits of AF Plus, you can keep eating your favorite foods and STILL lose pounds and inches – in fact we guarantee it!"  Exhibit B.

21.     Another of Defendants' radio advertisements for AF Plus claims that "Mayo Clinic research proves that carrying fat in your midsection raises your risk of heart disease, stroke, high blood pressure, even cancer.  If you need to lose weight, you absolutely must call now." Exhibit A, p. 4.  When consumers call to order they are then told: "Best of all, one capsule lasts an entire day.  That's 24 hours of fat burning power."  That IVR recording also claims that users lose "pounds and inches."  Exhibit B.

**FINAL TRIM ADVERTISING**

22.     One bottle of Final Trim sells for approximately $39.95 and contains 30 capsules. It is usually sold as part of a minimum order of two bottles for $79.90.  The recommended serving size is two capsules per day.  Final Trim contains the following ingredients:

- Thiamin (as thiamin mononitrate), 1mg
- Riboflavin, 1.13mg
- Konjac root (glucomannan), 1,000mg
- HyperLoss blend 380mg*

*Rhodiola rosea* root extract (1% rosavins), Ashwagandha root (from 5:1 concentrate), Bee pollen, Green Tea Extract, Licorice root (from 4:1 concentrate), Schizandra berry (from 10:1 extract),

6

Acai fruit (*Euterpe oleracea*) (from 5:1 extract), Adrenal (bovine),
Wild jujube seed extract, Passion flower extract (plant), *Panax
ginseng* root, 5-HTP (from *Griffonia simplicifolia* seed extract), Zinc
ascorbate, Biotin

23.    One radio advertisement for Final Trim features the female and male voices of
purported product endorsers who claim to have lost 50 pounds, 45 pounds, and 30 pounds,
respectively.  Exhibit C, p.1.  Another radio advertisement for Final Trim features a purported
company spokesperson, Jill Moore, who states "I got tired of being fat.  Being overweight really
limited my life because I didn't have any self confidence.  I've since lost [all of] the extra pounds
and inches with Final Trim.  Hi, I'm Jill Moore with Final Trim.  If you need to lose 30 pounds
or more, I'm inviting you to participate in our nationwide risk-free trial."  These characters are
fictitious, as are their reported experiences.  Exhibit C, p. 2.

24.    Defendants' radio advertisements for Final Trim claim that "Final Trim is an
amazing PROVEN breakthrough in weight loss:  a ONCE-daily capsule that can help you lose
weight in days," Exhibit C, p. 3, and "This product is proven and can cause dramatic weight loss
so supplies are limited … experience maximum weight loss - pounds in days."  Exhibit C, p. 6.

25.    Many of Defendants' radio advertisements for Final Trim similarly claim that
users lose pounds in days, and as much as 30 pounds or more.  Exhibit C.

26.    An IVR script for Final Trim claims "Since our metabolism-boosting formula
helps you shed body fat more quickly, you can keep eating your favorite foods and STILL lose
pounds and inches – in fact, we guarantee it!"  Exhibit D.

**MARKETING PRACTICES FOR AF PLUS AND FINAL TRIM**

27.    The radio advertisements for AF Plus and Final Trim are very similar and invite
consumers to respond to a toll-free number to receive their "risk-free trial" for either AF Plus or

Final Trim.  Defendants' IVR recordings frequently greet consumers with the news that they have called "in time to get one of the last 100 trials" for AF Plus or Final Trim.  Exhibits B & D.

28.     At least one of Defendants' radio advertisements for AF Plus deceptively implies that it is a public service announcement, citing a Surgeon General's warning regarding obesity and offering to distribute AF Plus "risk free" on a "first-come, first-served basis."  Exhibit A, p. 5.

29.     At least one of Defendants' radio advertisements for Final Trim deceptively states that "The following message is not a radio commercial.  It's a gift to anyone listening today who needs to lose weight."  Exhibit C, p. 7.  In fact, consumers who call the toll-free number in the advertisement are prompted to give a credit or debit card to the IVR and are charged $7.95 in postage to receive the product.  Further, in order to avoid being charged an additional $79.90, consumers must also pay the postage for returning the product and call to cancel the continuity plan in which Defendants have automatically enrolled them.

30.     The IVR scripts and marketing materials for both AF Plus and Final Trim are very similar.  The IVR requests consumers' names and credit or debit card numbers prior to giving any disclosures about the terms of the offer.  Consumers who agree to the "risk-free trial" offers are asked to pay $7.95 in shipping costs to receive two bottles of either AF Plus or Final Trim valued at $79.90.

31.     Defendants' offers are not in fact free.  First, Defendants automatically enroll consumers into continuity plans that they fail to adequately disclose, creating the risk that consumers will incur further unauthorized charges to their credit or debit cards and receive unwanted products.  Defendants do not permit consumers to return these additional product shipments and refuse requests for refunds.

32.     Second, consumers risk incurring further charges if they do not follow Defendants' inadequately disclosed return policies.  For example, prior to sale, Defendants fail to disclose that consumers must call in advance to obtain a return authorization code and that they must return at least one unopened bottle of the product to avoid being charged $79.90 for both bottles.  In fact, consumers who do not return at least one unopened bottle of the products are charged the entire $79.90.

33.     Prior to sale, Defendants fail to disclose to consumers all of the steps they must take to avoid being charged for the "risk free" trial.  For example, consumers are not told that to avoid being charged they must:

- Call to cancel the order and obtain a Return Merchandise Authorization ("RMA") number from a customer service representative several days prior to the expiration of the "risk-free" trial;

- Return at least one unopened/sealed bottle of the product before the expiration of thirty (30) days after the initial inbound sales call;

- Pay the cost of returning the product;

- Obtain a tracking number to prove the product had been properly returned within thirty (30) days; and

- Call the company's customer service number again with the tracking number prior to the expiration of the 30-day trial period.

After the sale, Defendants still do not adequately disclose all the steps consumers must take to avoid being charged.  For example, while Defendants send consumers a pamphlet that directs consumers, in small print, to return the product to obtain a refund, the pamphlet does not explain that the product must be returned unopened.  Even when consumers follow all of Defendants'

refund policies, including the return of unopened products prior to the expiration of the "risk-free" trial, many consumers are nevertheless charged $79.90 to their debit or credit cards.

34.     Consumers who respond to Defendants' "risk-free trial" are also offered their choice of $80 worth of gift cards from either Walmart or Target for enrolling in 30-day trial memberships in two buying clubs, Home Play and ValuePlus.  The cost for each club, $1.95, is billed to consumers in advance for the first month.  If consumers do not cancel within thirty (30) days, the monthly price of each club goes up to $24.95.  Although consumers are repeatedly promised that they will receive $80 worth of gift cards whether or not they remain club members, consumers do not receive the full value of the promised gift cards.  To receive even a fraction of the promised gift card value, consumers must go to two separate websites, investigate each club's website for gift card offers, print out forms, fill out the forms, mail in each form separately, and repeat the entire application process again eight weeks later.

35.     In many cases, in order to justify denying refunds, Defendants misrepresent that consumers were given all of the information about the terms of the offer before they made the purchase.

36.     In some instances, despite Defendants' representations that consumers may cancel easily and at any time, consumers who call Defendants' toll-free customer service numbers to cancel their "free trial" or "risk-free trial," or cancel continuity programs, are unable to reach a customer service representative.  When consumers are unable to reach a customer service representative within the cancellation period, Defendants strictly enforce the company's refund and cancellation policies, refusing to honor cancellations or refund requests.

37.     Defendants obtain debit card numbers from many consumers with the intention of charging them for continuity plans without first obtaining their written or other similarly

10

authenticated authorization in advance in a form that describes the terms of the preauthorized

transfer in a clear and understandable form.

## VIOLATIONS OF THE FTC ACT

38.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

or practices in or affecting commerce."

39.    Misrepresentations or deceptive omissions of material fact constitute deceptive

acts or practices prohibited by Section 5(a) of the FTC Act.

40.    Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any

false advertisement in or affecting commerce for the purpose of inducing, or which is likely to

induce, the purchase of food, drugs, devices, services, or cosmetics.  For the purposes of Section

12 of the FTC Act, 15 U.S.C. § 52, AF Plus and Final Trim are "foods" or "drugs," as defined in

Section 15(b) and (c) of the FTC Act, 15 U.S.C. § 55(b), (c).  The term "false advertisement"

means an advertisement, other than labeling, which is misleading in a material respect.  15

U.S.C. § 55(a)(1).

## COUNT I

### FALSE OR UNSUBSTANTIATED CLAIMS

41.    Through the means described in Paragraphs 16-21 and Paragraphs 23-26,

including, but not limited to the statements and representations contained in advertising and IVR

scripts, attached as Exhibits A through D, Defendants have represented, expressly or by

implication, that:

> a.    AF Plus, taken as directed, will cause users to lose weight, including 30
>
>        pounds or more;
>
> b.    AF Plus, taken as directed, is proven to cause substantial weight loss;

c.     AF Plus, taken as directed, will cause users to lose pounds in days;

d.     AF Plus, taken as directed, burns fat;

e.     AF Plus, taken as directed, boosts users' metabolism, thereby allowing users to keep eating their favorite foods and still lose pounds and inches;

f.     Final Trim, taken as directed, will cause users to lose weight, including as much as 30 pounds or more;

g.     Final Trim, taken as directed, is proven to cause substantial weight loss;

h.     Final Trim, taken as directed, will cause users to lose pounds in days; and

i.     Final Trim, taken as directed, boosts users' metabolism, thereby allowing users to keep eating their favorite foods and still lose pounds and inches.

42.     The representations set forth in Paragraph 41 are false or misleading, or were not substantiated at the time the representations were made.  Therefore, the making of the representations set forth in Paragraph 41 constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT II

### FALSE ADVERTISING CLAIMS

43.     Through the means described in Paragraphs 17 and 23 Defendants have represented, explicitly or by implication, that the product users appearing in Defendants' advertising for AF Plus and Final Trim have successfully used those products to lose substantial weight.

44.     In truth and in fact, the purported users of AF Plus and Final Trim appearing in Defendants' advertising for AF Plus and Final Trim are fictitious, and their reported experiences did not occur.

45.     Therefore, the making of the representations set forth in Paragraph 43 constitutes a deceptive act or practice and the making of false advertisements in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT III

## DECEPTIVE FORMAT OF RADIO ADVERTISING

46.     Through the means described in Paragraphs 28 and 29, Defendants have represented, directly or indirectly, expressly or by implication, that radio advertisements for AF Plus and Final Trim were objective news reports or public service announcements.

47.     In truth and in fact, these radio advertisements were not objective news reports or public service announcements.

48.     Therefore, the making of the representations as set forth in Paragraph 46 constitutes a deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

## DECEPTIVE PROMISES OF FREE GIFT CARDS

49.     Through the means described in Paragraph 34, Defendants represented to consumers that by enrolling in two buying clubs on a trial basis for thirty (30) days and paying an up-front charge of $3.90 for both clubs, they would receive $80 worth of gift cards of the consumers' choice from Walmart or Target, whether or not consumers cancelled their memberships within the first thirty (30) days.

50.     In truth and in fact, many consumers did not receive $80 worth of Walmart or Target gift cards as represented by Defendants, whether or not they cancelled their memberships within thirty (30) days.

51.     Therefore, the making of the representations set forth in Paragraph 49 constitutes a deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT V**

**MISREPRESENTATIONS ABOUT RISK-FREE TRIAL OFFERS**

52.     Through the means described in Paragraphs 27-30 and 32-37, Defendants have represented to consumers, directly or indirectly, expressly or by implication, that they may try two bottles of AF Plus and Final Trim for thirty (30) days "risk free" without incurring any financial obligation.

53.     The representation in Paragraph 52 is false because Defendants charged consumers the full cost of $79.90 for the "risk free" trial if they opened both bottles of the products.  Consumers also became obligated to pay the cost of returning unopened products and were enrolled in inadequately disclosed continuity plans, creating the risk of incurring additional charges

54.     Therefore, the making of the representations set forth in Paragraph 52 constitutes a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

14

## COUNT VI

## MISREPRESENTATIONS ABOUT CREDIT/DEBIT CARD CHARGES AND CANCELLATIONS

55.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of AF Plus and Final Trim, Defendants have represented, directly or indirectly, expressly or by implication, that they will not charge consumers who cancel "risk-free trials" within thirty (30) days, and will honor timely cancellations of continuity plans.

56.     In truth and in fact, in numerous instances in which Defendants have made the representations described above in Paragraph 55, Defendants charged consumers' credit or debit cards $79.90 for AF Plus and Final Trim after consumers had cancelled "risk-free trials" within thirty (30) days, or Defendants did not honor timely cancellations of continuity plans.

57.     Therefore, the making of the representations set forth in Paragraph 55 constitutes a deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT VII

## FAILURE TO ADEQUATELY DISCLOSE TERMS OF OFFERS

58.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of AF Plus and Final Trim, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who provide their billing information will not be charged, or will pay only a small shipping fee.

59.     In numerous instances in which Defendants have made the representations set forth in Paragraph 58 above, Defendants have failed to disclose, or disclose adequately, material terms and conditions of the offer, including, but not limited to, that:

     a.      Consumers will be automatically charged $79.90 for the initial purchase of AF Plus or Final Trim if they do not cancel by telephone, obtain a return tracking number from Defendants, and return at least one unopened bottle to Defendants at the consumers' own expense and prior to the expiration of thirty (30) days; and

     b.      Consumers will automatically be enrolled in a continuity plan for future auto-shipments of AF Plus or Final Trim that will be billed to their credit or debit cards.

60.    Defendants' failure to disclose, or disclose adequately, the material information described in Paragraph 59, in light of the representation set forth in Paragraph 58, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT VIII

## UNFAIRLY CHARGING CONSUMERS WITHOUT AUTHORIZATION

61.    In numerous instances, Defendants have caused charges to be submitted for payment to the credit and debit cards of consumers without the express informed consent of those consumers.

62.    Defendants' acts or practices as set forth in Paragraph 61 cause or are likely to cause substantial injury to consumers that those consumers cannot reasonably avoid themselves and that injury is not outweighed by countervailing benefits to consumers or competition.

63.    Therefore, Defendants' acts or practices as set forth in Paragraph 61 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## <u>VIOLATIONS OF EFTA AND REGULATION E</u>

64.     Section 509(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C.

§ 1693(a), provides that a "preauthorized electronic fund transfer from a consumer's account

may be authorized by the consumer only in writing, and a copy of such authorization shall be

provided to the consumer when made."  Section 903(10) of EFTA, 15 U.S.C. § 1693a(10),

provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer

authorized in advance to recur at substantially regular intervals."

65.     Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that

"[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by

a writing signed or similarly authenticated by the consumer.  The person that obtains the

authorization shall provide a copy to the consumer."

66.     Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to

Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should

evidence the consumer's identity and assent to the authorization."  *Id*. at ¶ 10(b), cmt. 5.  The

Official Staff Commentary further provides that "[a]n authorization is valid if it is readily

identifiable as such and the terms of the preauthorized transfer are clear and readily

understandable."  *Id*. at ¶ 10(b), cmt. 6.

67.     Pursuant to Section 917(c) of EFTA, 15 U.S.C. § 1693o(c), every violation of

EFTA and Regulation E constitutes a violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a)

and 45(n).

## COUNT IX

## EFTA AND REGULATION E

68.     In numerous instances, Defendants have debited consumers' bank accounts on a

recurring basis without obtaining a written authorization signed or similarly authenticated from

consumers for preauthorized electronic fund transfers from their accounts, thereby violating

Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12

C.F.R. § 205.10(b).

69.     In numerous instances, Defendants have debited consumers' bank accounts on a

recurring basis without providing to the consumer a copy of a written authorization signed or

similarly authenticated by the consumer for preauthorized electronic fund transfers from the

consumer's account, thereby violating Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and

Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

70.     By engaging in violations of EFTA and Regulation E as set forth in Paragraphs 68

and 69, Defendants have engaged in violations of 15 U.S.C. § 1693o(c) and Section 5 of the FTC

Act, 15 U.S.C. §§ 45(a) and 45(n).

## <u>VIOLATIONS OF MAINE LAW</u>

71.     The Maine UTPA, § 207, declares unlawful "unfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce."

72.     Misrepresentations or deceptive omissions of material fact constitute deceptive

acts or practices prohibited by Section 207 of the Maine UTPA.

73.     Section 206 of the Maine UTPA defines "trade or commerce" as including "the

advertising, offering for sale, sale or distribution of any services and any property, tangible or

intangible, real, personal or mixed, and any other article, commodity or thing of value wherever

situate, and shall include any trade or commerce directly or indirectly affecting the people of this State."  ME. REV. STAT. tit. 5, § 206.

74.     Chapter 205-A, "Required Disclosures to Consumers," of Title 10 of Maine's statutes prohibits certain practices related to free trial offers.  ME. REV. STAT. tit. 10, §§ 1210 through 1210-B.

75.     Section 1210(2) prohibits making free offers unless, at the time of the offer, "the seller provides the consumer with clear and conspicuous information regarding the terms of the free offer, including any additional financial obligations that may be incurred as a result of accepting the free offer."  ME. REV. STAT. tit. 10, § 1210.

76.     Section 1210-A provides that a violation of Title 10, Chapter 205-A is a violation of the Maine UTPA.

## COUNT X

## FALSE OR UNSUBSTANTIATED CLAIMS

77.     Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraph 41 of this Complaint.

78.     The representations set forth in Paragraph 41 are false or misleading, or were not substantiated at the time the representations were made.  Therefore, by making the representations described in Paragraph 41, Defendants have engaged in a pattern or practice of unfair or deceptive acts or practices in the conduct of trade or commerce by falsely advertising, distributing, and selling AF Plus and Final Trim as products that would directly or indirectly cause weight loss, in violation of ME. REV. STAT. tit. 5, § 207.

79.     Defendants' conduct as described herein has been intentional.

## COUNT XI

## FALSE ADVERTISING CLAIMS

80.     Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraphs 43-44 of this Complaint.

81.     Through the above-described conduct and representations, Defendants engaged in a pattern or practice of unfair or deceptive acts or practices in the conduct of trade or commerce by falsely advertising AF Plus and Final Trim as products that endorsers have used successfully for substantial weight loss, in violation of ME. REV. STAT. tit. 5, § 207.

82.     Defendants' conduct as described herein has been intentional.

## COUNT XII

## DECEPTIVE FORMAT OF RADIO ADVERTISING

83.     Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraphs 46-47 of this Complaint.

84.     Through the above-described conduct and representations, Defendants engaged in a pattern or practice of unfair or deceptive acts or practices in the conduct of trade or commerce by falsely representing that radio advertisements for AF Plus and Final Trim were objective news reports or public service announcements, in violation of ME. REV. STAT. tit. 5, § 207.

85.     Defendants' conduct as described herein has been intentional.

## COUNT XIII

## DECEPTIVE PROMISES OF FREE GIFT CARDS

86.     Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraphs 49-50 of this Complaint.

87.     Through the above-described conduct, Defendants engaged in a pattern or practice of unfair or deceptive acts or practices in the conduct of trade or commerce by falsely advertising, distributing, and selling buying club memberships with the representation that becoming a paying member would entitle consumers to their choice of $80 worth of either Walmart or Target gift cards, in violation of ME. REV. STAT. tit. 5, § 207.

88.     Defendants' conduct as described herein has been intentional.

## COUNT XIV

## MISREPRESENTATIONS ABOUT RISK-FREE TRIAL OFFERS

89.     Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraphs 52-53 of this Complaint.

90.     Through the above-described conduct, Defendants engaged in a pattern or practice of unfair or deceptive acts or practices in the conduct of trade or commerce by falsely advertising or representing that consumers could try AF Plus or Final Trim for thirty (30) days "risk-free," without incurring any financial obligation, in violation of ME. REV. STAT. tit. 5, § 207 and ME. REV. STAT. tit 10, § 1210.

91.     Defendants' conduct as described herein has been intentional.

## COUNT XV

## MISREPRESENTATIONS ABOUT CREDIT/DEBIT CARD CHARGES AND CANCELLATIONS

92.     Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraphs 55-56 of this Complaint.

93.     Through the above-described conduct, Defendants engaged in a pattern or practice of unfair or deceptive acts or practices in the conduct of trade or commerce by falsely advertising or representing that they will not charge consumers who cancel "risk-free trials" for

AF Plus or Final Trim within thirty (30) days, and that Defendants will honor timely cancellations of continuity plans, in violation of ME. REV. STAT. tit. 5, § 207 and ME. REV. STAT. tit. 10, § 1210.

94.    Defendants' conduct as described herein has been intentional.

## COUNT XVI

### FAILURE TO ADEQUATELY DISCLOSE TERMS OF OFFERS

95.    Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraphs 58-59 of this Complaint.

96.    Through the above-described conduct, Defendants engaged in a pattern or practice of unfair or deceptive acts or practices in the conduct of trade or commerce by failing to disclose, or to disclose adequately, the material information described in Paragraph 59 in light of the representations set forth in Paragraph 58, in violation of ME. REV. STAT. tit. 5, § 207 and ME. REV. STAT. tit. 10, § 1210.

97.    Defendants' conduct as described herein has been intentional.

## COUNT XVII

### UNFAIRLY CHARGING CONSUMERS WITHOUT AUTHORIZATION

98.    Plaintiff State of Maine incorporates herein by reference all of the allegations contained in Paragraphs 61-62 of this Complaint.

99.    Through the above-described conduct, Defendants engaged in a pattern or practice of unfair acts or practices in the conduct of trade or commerce by charging the debit and credit cards of consumers without the consumers' express informed consent, in violation of ME. REV. STAT. tit. 5, § 207.

100.    Defendants' conduct as described herein has been intentional.

## CONSUMER INJURY

101.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, EFTA, and the Maine UTPA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THE COURT'S POWER TO GRANT RELIEF

102.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and 15 U.S.C. § 1693o(c), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations  of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

103.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to enable Plaintiff State of Maine to enforce its state law claims under the Maine Unfair Trade Practices Act, ME. REV. STAT. tit. 5, §§ 205-a through 214, against Defendants in this Court.  Section 209 of the Maine UTPA empowers this Court to grant injunctive and such other relief, including civil penalties for intentional violations, as the Court may deem appropriate to halt and redress violations of any provision of the Maine UTPA enforced by the Maine Attorney General.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies, to prevent and remedy any violation of the Maine UTPA

enforced by the Maine Attorney General.

## FTC PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC

Act, 15 U.S.C. §§ 53(b), Section 917(c) of EFTA, 15 U.S.C. § 1693o(c), and the Court's own

equitable powers, requests that the Court:

A.   Enter a permanent injunction to prevent future violations of the FTC Act and
     EFTA by Defendants;

B.   Award such relief as the Court finds necessary to redress injury to consumers
     resulting from Defendants' violations of the FTC Act and EFTA, including but
     not limited to, rescission or reformation of contracts, restitution, the refund of
     monies paid, and the disgorgement of ill-gotten monies; and

C.   Award Plaintiff FTC the costs of bringing this action, as well as such other and
     additional relief as the Court may determine to be just and proper.

## MAINE PRAYER FOR RELIEF

Wherefore, Plaintiff State of Maine, pursuant to the Maine UTPA, ME. REV. STAT. tit. 5,

§ 209, and the Court's own equitable powers, requests that the Court:

A.   Enter an order declaring Defendants' above-described conduct to be in violation
     of the Maine UTPA, ME. REV. STAT. tit. 5, § 207 and to be intentional violations
     pursuant to the Maine UTPA, ME. REV. STAT. tit. 5, § 209;

B.   Enter a permanent injunction to prevent future violations of the Maine UTPA by
     Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the Maine UTPA, including but not

limited to, rescission or reformation of contracts, restitution, the refund of monies

paid, and the disgorgement of ill-gotten monies;

D.      Adjudge civil penalties of not more than ten thousand dollars ($10,000) for each

intentional violation of the Maine UTPA pursuant to ME. REV. STAT. tit. 5, § 209;

and

E.      Award Plaintiff State of Maine the costs of bringing this action, prejudgment

interest pursuant to ME. REV. STAT. tit. 14, § 1602-B, and such other and

additional relief as the Court may determine to be just and proper.

Respectfully submitted,


JONATHAN NUECHTERLEIN
General Counsel

/s/ James A. Prunty
James A. Prunty
David P. Frankel
Carolyn L. Hann
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
Telephone: 202-326-2438, 2812, 2745
Facsimile:  202-326-3259
Email:  jprunty@ftc.gov,
        dfrankel@ftc.gov
        chann@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

JANET T. MILLS
Attorney General, State of Maine

/s/ Brendan F.X. O'Neil
Brendan F.X. O'Neil
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333
Telephone: 207-626-8842
Facsimile: 207-624-7730
Email: brendan.oneil@maine.gov