IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

_____

FEDERAL TRADE COMMISSION and )
STATE OF MAINE, )
)
Plaintiffs, )    Case No. 2:16-cv-00023-GZS
)
v. )    **STIPULATED FINAL JUDGMENT**
)    **AND ORDER FOR PERMANENT**
)    **INJUNCTION AND OTHER**
ANTHONY DILL, STACI DILL, )    **EQUITABLE RELIEF AS TO**
DIRECT ALTERNATIVES, and )    **DEFENDANTS ANTHONY DILL,**
ORIGINAL ORGANICS LLC, )    **STACI DILL, DIRECT**
)    **ALTERNATIVES, AND**
Defendants. )    **ORIGINAL ORGANICS LLC**
_____ )

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the State of

Maine, as represented in this matter by the Office of the Attorney General of Maine ("Maine

AG") (hereafter "Plaintiffs"), filed a Complaint for Permanent Injunction and Other Equitable

Relief against Defendants pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. § 53(b), and pursuant to Section 209 of the Maine Unfair Trade Practices Act

("Maine UTPA"), ME. REV. STAT. tit. 5, § 209, to obtain permanent injunctive relief, rescission

or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten

monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a)

and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and the Electronic Fund Transfer Act

("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 1005.10,

and in violation of Section 207 of the Maine UTPA, ME. REV. STAT. tit. 5, § 207, in connection

with the labeling, advertising, marketing, distribution, and sale of purported weight-loss

products.

The Commission, the State of Maine, and Defendants stipulate to the entry of this Final Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendants Anthony Dill and Staci Dill ("Dill Defendants") and Direct Alternatives and Original Organics LLC ("Original Organics") (hereafter collectively "Defendants").

### FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in unfair and deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and in violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 1005.10, and in violation of Section 207 of the Maine UTPA, ME. REV. STAT. tit. 5, § 207, in connection with the labeling, advertising, marketing, distribution, and sale of purported weight-loss products.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Final Order.  For purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants represent that they have ceased all sales of the products at issue in this Complaint, including all continuity sales of such products.

5.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Final Order, and agree to bear their own costs and attorney fees.

6.      Defendants and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Final Order.

## DEFINITIONS

For the purpose of this Final Order, the following definitions apply:

1.      "**Corporate Defendants**" means Direct Alternatives and Original Organics LLC, and their successors and assigns.

2.      "**Individual Defendants**" means Anthony Dill and Staci Dill.

3.      "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

4.      "**Cosmetic**," "**Drug**," and "**Food**" mean as defined in Section 15 of the FTC Act, 15 U.S.C. § 55.

5.      "**Covered Product**" means any dietary supplement, food, drug, or cosmetic product, whether for humans or animals, including AF Plus and Final Trim.

6.      "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

> A.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

> B.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying

text or other visual elements so that it is easily noticed, read, and

understood;

C.    An audible disclosure, including by telephone or streaming video, must be

delivered in a volume, speed, and cadence sufficient for ordinary

consumers to easily hear and understand it;

D.    In any communication using an interactive electronic medium, such as the

Internet or software, the disclosure must be unavoidable;

E.    The disclosure must use diction and syntax understandable to ordinary

consumers and must appear in each language in which the representation

that requires the disclosure appears;

F.    The disclosure must comply with these requirements in each medium

through which it is received, including all electronic devices and face-to-

face communications;

G.    The disclosure must not be contradicted or mitigated by, or inconsistent

with, anything else in the communication; and

H.    When the representation or sales practice targets a specific audience, such

as children, the elderly, or the terminally ill, "ordinary consumers"

includes reasonable members of that group.

7.    "**Dietary supplement**" means:

A.    any product labeled as a dietary supplement or otherwise represented as a

dietary supplement; or

B.    any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar

form containing one or more ingredients that is a vitamin, mineral, herb or

other botanical, amino acid, probiotic, or other dietary substance to

supplement the diet by increasing the total dietary intake, or a concentrate,

metabolite, constituent, extract, or combination of any ingredient

described above, that is intended to be ingested, and is not represented to

be used as a conventional food or as a sole item of a meal or the diet.

8.     "**Endorsement**" means as defined in 16 C.F.R. § 255.0(b), including as explained

in the Commission's Guides Concerning the Use of Endorsements and Testimonials in

Advertising.

9.     "**Endorser**" means an individual or organization that provides an Endorsement.

10.     "**Essentially Equivalent Product**" means a product that contains the identical

ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same

form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the

Covered Product; *provided that* the Covered Product may contain additional ingredients if

reliable scientific evidence generally accepted by experts in the field indicates that the amount

and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the

ingredients in the Essentially Equivalent Product.

11.     "**Negative Option Feature**" means, in an offer or agreement to sell or provide

any good, program, or service, a provision under which the consumer's silence or failure to make

an affirmative action to reject goods or services, or to cancel the agreement, is interpreted by the

seller or provider as acceptance of the offer.

12.     "**Person**" means a natural person, an organization, or other legal entity, including

a corporation, partnership, sole proprietorship, limited liability company, association,

cooperative, or any other group or combination acting as an entity.

13.    "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

14.    "**Reliably Reported**" for a human clinical test or study (herein, "test"), means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

15.    "**Receivership Estate**" shall include the following property and any proceeds, product, offspring, rents, or profits of or from the property, notwithstanding any provision in any agreement, transfer instrument, or applicable law that restricts or conditions transfer of such interest or that is conditioned on the insolvency or financial condition of the Defendants, or on the appointment of or taking possession by a trustee, receiver, or custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the Defendants' interest in the following property:

A.    2007 Glastron Bow Rider (watercraft), VIN XXXX56D707, located at Thomas Aviation, 1684 Roxbury Road, Roxbury, Maine;

B.    2011 Polaris snowmobile, 600 IQ, VIN XXXX129945, located at 4 Case Road, Rangeley, Maine;

C.    2008 Polaris snowmobile, 600 HQIQ, VIN XXXX336250, located at 4 Case Road, Rangeley, Maine;

D.    Real property located at 4 Case Road, Rangeley, Maine, together with all structures, fixtures, and appurtenances thereto, including all furnishings, furniture, appliances, audio, and television equipment;

E.    The following Morgan Stanley investment accounts:

    (1)    XXXX62-605;

    (2)    XXXX52-605;

    (3)    XXXX63-605;

    (4)    XXXX23-605; and

    (5)    XXXX25-605;

F.    The following Defined Benefit Plan and retirement accounts held at

Morgan Stanley:

    (1)    Direct Alternatives Defined Benefit Pension Plan, Anthony &

        Staci Dill, Acct. XXXX68-605;

    (2)    Anthony Dill Roth IRA, Acct. XXXX00-605; and

    (3)    Staci Dill Roth IRA, Acct. XXXX08-605

G.    Surrender value of Defendant Staci Dill's Life insurance policy with the

RiverSource Variable Universal Life, policy XXXX2004;

H.    Surrender value of Defendant Anthony Dill's life insurance policy with

the Protective Life Insurance Co., policy XXXX8809;

I.    Valuable personal property located at 5 Rays Circle, Scarborough, Maine,

including tennis bracelet, diamond earrings (complete set), diamond

earring (one only), men's Rolex "Daytona" gold and silver watch, and two

Thomas Arvid prints;

J.    All of Defendants' cash being held in escrow or reserve by credit card

processing companies for Defendants, whether held under Defendants'

names or under other company names, including "Natural Options, LLC,"

for the benefit of any Defendant, including the following merchant

accounts:

(1)      Power Pay, Accts. XXXX3005, XXXX3788, and XXXX4342;

(2)      Electronic Merchant Systems, Acct. XXXX5562;

(3)      CashFlows, Accts. XXXX1774 and XXXX1431;

(4)      Signature Card Services, Accts. XXXX7110 and XXXX5980;

(5)      Vision Payment Solutions, Accts. XXXX1989 and XXXX7617;
         and

(6)      Humboldt, Acct. XXXX4883;

Provided, that Defendants shall be entitled to keep a total of $11,000

from these accounts;

K.    All of the property described or identified in Defendants' sworn

statements listed in Subsection XIII.E., that are assets of Direct

Alternatives and Original Organics LLC, including interest in:

(1)      All trademarks, including the trademark for "Original Organics,"
         USPTO Serial No. 77664091 and the trademark for "Acai Fresh,"
         USPTO Serial No. 77664083; and

(2)      Furniture, artwork, computers, multi-media devices, televisions,
         sound systems, telephones, and other equipment;

L.    No less than $200,000 currently held for the Defendants in

an attorney trust account at Venable LLP;

M.    All of Defendants' equitable and legal interests in the following

companies:

  (1)  Novia Products, LLC;

  (2)  The Ice Chest;

  (3)  Core Logix, LLC;

  (4)  Northern Maine Distilling Company; and

  (5)  Natural Options, LLC;

N.  All CNL Lifestyle Properties, Inc. stock, including stock held in account number XXXX16605;

O.  All of Defendants' interests in timeshares, including:

  (1)  Time Share with River Run Company, Inc. at Attitash Mountain Village, Washington House, Unit C4;

  (2)  Time Share with River Run Company, Inc. at Attitash Mountain Village, Washington House, Unit D4;

  (3)  Time Share with Exploria Resorts in Summer Bay, Florida, account number XXXX8293;

P.  Personal loans from Defendant Anthony Dill to any person or entity, including The Ice Chest, Corey Frink, and Kevin Boilard;

Q.  Trademarks owned by Defendants, including "Original Organics," USPTO serial number 77664091 and "Acai Fresh," USPTO serial number 77664083; and

R.  Tax refunds resulting from tax filings or amended tax filings by any of Defendants for the years 2014, 2015, and 2016.

16.  The term "**including**" in this Final Order means "including without limitation."

17.    The terms "**and**" and "**or**" in this Final Order shall be construed conjunctively or disjunctively as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

# I.

## BANNED WEIGHT-LOSS CLAIMS

**IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any dietary supplement, over-the-counter drug, patch, cream, wrap, or other product worn on the body or rubbed into the skin, are permanently restrained and enjoined from representing, or assisting others in representing, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that such product:

A.    Causes weight loss of two pounds or more a week for a month or more without dieting or exercise;

B.    Causes substantial weight loss no matter what or how much the consumer eats;

C.    Causes permanent weight loss;

D.    Blocks the absorption of fat or calories to enable consumers to lose substantial weight;

E.    Safely enables consumers to lose more than three pounds per week for more than four weeks;

F.    Causes substantial weight loss for all users; or

G.      Causes substantial weight loss by wearing a product on the body or rubbing it into the skin.

## II.

### PROHIBITED REPRESENTATIONS: OTHER WEIGHT-LOSS CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promoting, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, other than a representation banned under Section I, that any Covered Product:

A.      Causes or assists in causing weight loss, including any specific amount of weight loss;

B.      Causes or assists in causing fat loss, including any specific amount of fat loss; or

C.      Boosts or increases metabolism;

unless the representation is non-misleading, and, at the time such representation is made, Defendants possess and rely upon competent and reliable scientific evidence to substantiate that the representation is true. For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant field, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing shall

be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the relevant field as relevant to an assessment of such testing as described in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to Plaintiffs.  Defendants shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

### III.

### PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, directly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than representations covered under Sections I or II of this Final Order, about the health benefits, safety, performance, or efficacy of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by qualified persons; (2) that are generally accepted in the profession to yield accurate and reliable results; and (3) as to which, when they are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies are available for inspection and production to Plaintiffs.

## IV.

## PROHIBITED REPRESENTATIONS REGARDING TESTS, STUDIES, OR INGREDIENTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are hereby permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

    A.    That any Covered Product is clinically proven to cause weight loss;

    B.    That the benefits of any Covered Product are scientifically proven; or

    C.    The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research.

# V.

## FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Final Order shall prohibit Defendants from:

A.      Making any representation for any drug that is permitted in labeling for such drug under any tentative or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

B.      Making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

# VI.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Final Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.      All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.      Documents sufficient to identify all test participants, including any participants

who did not complete the test, and all communications with any participants relating to the test;

all raw data collected from participants enrolled in the test, including any participants who did

not complete the test; source documents for such data; any data dictionaries; and any case report

forms;

        D.      All documents referring or relating to any statistical analysis of any test data,

including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on

any test data; and

        E.      All documents referring or relating to the sponsorship of the test, including all

communications and contracts between any sponsor and the test's researchers.

        *Provided, however,* the preceding preservation requirement shall not apply to a Reliably

Reported test, unless the test was conducted, controlled, or sponsored, in whole or in part

by:  (1) any Defendant; (2) any Defendant's officers, agents, representatives, or

employees; (3) any other person or entity in active concert or participation with any

Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant;

(5) any supplier of any ingredient contained in the product at issue to any of the foregoing

or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants

must establish and maintain reasonable procedures to protect the confidentiality, security, and

integrity of any personal information collected from or about participants.  These procedures

shall be documented in writing and shall contain administrative, technical, and physical

safeguards appropriate to Defendants' size and complexity, the nature and scope of Defendants'

activities, and the sensitivity of the personal information collected from or about the participants.

# VII.

## PROHIBITION AGAINST MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including:

A.      That purported users of Defendants' goods or services who appear in advertising obtained a reported result through use of those goods or services;

B.      That consumers are receiving a money-back guarantee, a free trial offer, a risk-free trial offer, a free gift, or a bonus;

C.      The total cost to purchase, receive, or use the good or service, including shipping, handling, processing, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer;

D.      The timing or manner of any charge or bill;

E.      Any material restrictions, limitations, or conditions to purchase, receive, or use the good or service;

F.      Any material aspect of the performance, efficacy, nature, or central characteristics of the good or service; and

G.      Any material aspect of the nature or terms of a refund, return, cancellation, exchange, or repurchase policy for the good or service, including the deadline (by date or frequency) by which the consumer must act.

## VIII.

## REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promoting, offering for sale, or sale of any good or service, Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Final Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Failing to clearly and conspicuously disclose, or assisting others in failing to clearly and conspicuously disclose, before consumers are asked to reveal billing information or to consent to any purchase in connection with any claim that a good or service is "free," has a minimal cost, or is being offered on a trial basis or at an introductory or limited-time reduced cost, the following material terms and conditions of any offer:

        1.      In close proximity to such claim, the total cost to purchase, receive, or use any good or service that is the subject of the sales offer, including shipping, handling, and processing;

        2.      The amount, timing, and manner of payment of all fees, charges, or other amounts that a consumer will be charged or billed, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer; and

        3.      The terms and conditions of any refund, cancellation, exchange, or repurchase policy or policies, including the specific steps and means by which such requests must be submitted, and the telephone number, email address, web address, or street address to which such requests must be

directed, including the deadline (by date or frequency) by which the consumer must act; and, if there is a policy of not making refunds, cancellations, exchanges, or repurchases, a statement regarding this policy; and

B.     Failing to clearly and conspicuously disclose, or assisting others in failing to clearly and conspicuously disclose, before consumers are asked to reveal billing information or consent to any purchase that includes a Negative Option Feature:

1.     That the consumer will be charged for the good or service, or that the charges will increase after the trial period ends, and if applicable, that the charges will be on a recurring basis, unless the consumer timely takes steps to prevent or stop such charges;

2.     The amount (or range of costs) the consumer will be charged or billed, including shipping, handling, and processing, and, if applicable, the frequency of such charges unless the consumer timely takes steps to prevent or stop them;

3.     The deadline (by date or frequency) by which the consumer must act in order to stop the recurring charges;

4.     The name of the seller or provider of the good or service;

5.     A description of the good or service; and

6.     The mechanism to stop any recurring charges.

In addition, for any transaction involving a sale of a good or service to a consumer through a Negative Option Feature, within ten (10) days after the date of the sale, Defendants must send the consumer written confirmation of the transaction, either by email or first class

mail, according to the consumer's preference, which is identified as a written confirmation in the email subject line or on the outside of the envelope.  Such written confirmation shall include Clear and Conspicuous disclosure of all the information required by this Subsection VIII.B(1)-(6) above, and shall specify the procedures by which consumers can cancel or obtain a refund.

## IX.

### EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from using billing information to obtain payment from a consumer, unless, prior to using such billing information to obtain payment, Defendants obtain the express informed consent of the consumer.

A.      For all written offers with a Negative Option Feature (including over the Internet or other web-based applications or services), a consumer's express informed consent shall be obtained, prior to Defendants obtaining any billing information from consumers, through a check box, signature, or other substantially similar method, that consumers must affirmatively select or sign to accept the Negative Option Feature.  Immediately adjacent to such check box, signature, or substantially similar method, Defendants shall disclose all costs associated with the Negative Option Feature, including shipping, handling, and processing, that the consumer is agreeing to pay such costs, the length of any trial period, and the date by which consumers must cancel to avoid being charged.  This disclosure shall contain no additional information and shall be Clear and Conspicuous in relation to any other information provided on the page relating to costs,

risks, or obligations associated with any Negative Option Feature, including any terms referring to "free," "trial," and "processing fee."

B.    For all oral offers including a Negative Option Feature, Defendants shall, in addition to disclosing the information identified in Section VIII.A-B, "Required Disclosures," and prior to obtaining any billing information from a consumer, obtain affirmative and unambiguous oral confirmation that the consumer:

        1.    Consents to authorizing payment for any goods or services, including shipping, handling, and processing;

        2.    Understands that the transaction includes a Negative Option Feature; and

        3.    Understands the specific affirmative steps the consumer must take to prevent further charges.

Defendants shall maintain for three (3) years from the date of each transaction an unedited voice recording of the entire transaction, including the prescribed statements set out in Section VIII.A-B, "Required Disclosures."  Each recording must be retrievable by date and by the consumer's name, telephone number, or billing information and must be provided upon request and without charge to the consumer, the consumer's bank, or any law enforcement entity.

## X.

## PROHIBITIONS CONCERNING REFUNDS AND CANCELLATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from:

A.      Misrepresenting, expressly or by implication, any material term of any refund, return, or cancellation policy or practice;

B.      Failing to disclose, Clearly and Conspicuously, before a consumer consents to pay for such good or service through a Negative Option Feature, all material terms, limitations, and conditions of any refund, return, or cancellation policy, including the deadline (by date or frequency) by which the consumer must act, and prohibitions against refunds, returns, or cancellations;

C.      Failing to honor a refund, return, or cancellation request that complies with any policy to make refunds or allow returns or cancellations; and

D.      Failing to provide a simple mechanism for a consumer to immediately stop any recurring charge for such good or service, at least one of which is as simple and easy to use as the mechanism the consumer used to initiate the charges.

1.      For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Defendants must provide a mechanism for consumers to stop the recurring charge over the Internet or through such other web-based application or service.

2.      For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Defendants must maintain a telephone number through which the consumer can easily cancel the good or service, seek a refund for past charges, and immediately stop all further charges. Defendants must answer all calls to this telephone number during normal business hours.

## XI.

## PROHIBITION ON VIOLATING THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined from violating the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, a copy of which is attached hereto as EXHIBIT A.

## XII.

## COMPLIANCE WITH THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any good or service, are permanently restrained and enjoined, in connection with any person who purchases any good or service subsequent to the date of this Final Order, and who uses a debit card or other means of electronic fund transfer, from:

A.      Failing to obtain written authorization for Preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer, as required by Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as it may hereafter be amended; and

B.      Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain written authorization for a Preauthorized Electronic Fund Transfer, as required in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as it may hereafter be amended.

## XIII.

## MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.      Judgment is hereby entered in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of $16,419,989.00, as equitable monetary relief.  Upon satisfaction of the conditions set forth in Subsection XIII.B, that Judgment shall be suspended;

B.      The Defendants shall liquidate, sell, convey, assign, or transfer, as required by the Liquidation Receiver, to the Liquidation Receiver, or to such other party as the Liquidation Receiver directs, all of their legal and equitable interests and rights in the Receivership Estate. Specifically, Defendants shall:

1.      Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, transfer or otherwise convey to the Liquidation Receiver or to such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, all legal and equitable title to the real property located at 4 Case Road, Rangeley, Maine, together with all structures, fixtures, and appurtenances thereto, including all furnishings, furniture, appliances, audio and television equipment located at 4 Case Road, Rangeley, Maine.  *Provided, however*, that the Dill Defendants may use and occupy the premises at the sole discretion of, and in accordance

with the terms set by, the Liquidation Receiver, which shall not unduly interfere with the Liquidation Receiver's sale of the real property;

2.     Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, assign, sell, or transfer to the Liquidation Receiver, or to such other party as the Liquidation Receiver may direct as required by the Liquidation Receiver, all interest in timeshares, including:

(1)     Time Share with River Run Company, Inc. at Attitash Mountain Village, Washington House, Unit C4, New Hampshire;

(2)     Time Share with River Run Company, Inc. at Attitash Mountain Village, Washington House, Unit D4, New Hampshire;

(3)     Time Share with Exploria Resorts in Summer Bay, Florida, account number XXXX8293;

3.     Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, assign, sell, or transfer to the Liquidation Receiver, as required by the Liquidation Receiver or such other party as the Liquidation Receiver may direct, title to the 2007 Glastron Bow Rider (watercraft), VIN XXX56D707, located at Thomas Aviation, 1684 Roxbury Road, Roxbury, Maine;

4.     Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, assign, sell, or transfer to the Liquidation Receiver, as required by the Liquidation Receiver or such other party as the Liquidation Receiver may direct, title to the 2011Polaris

snowmobile, 600 IQ, VIN XXXX129945, located at 4 Case Road, Rangeley, Maine;

5.    Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, title to the 2008 Polaris snowmobile, 600 HQIQ, VIN XXXX336250, located at 4 Case Road, Rangeley, Maine;

6.    Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, the surrender value of Defendant Staci Dill's life insurance policy with the RiverSource Variable Universal Life, policy XXXX2004;

7.    Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, the surrender value of Defendant Anthony Dill's life insurance policy with the Protective Life Insurance Co., policy XXXX8809;

8.    Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, deliver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver, or such other party as the Liquidation

Receiver may direct, the following valuable personal property, all located at 5 Rays Circle, Scarborough, Maine:

(1)    A tennis bracelet;

(2)    Set of diamond earrings;

(3)    Diamond earring (single);

(4)    Men's "Daytona" Rolex gold and silver watch; and

(5)    Thomas Arvid prints;

9.    Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, all interest in the following Morgan Stanley investment accounts:

(1)    XXXX62-605;

(2)    XXXX52-605;

(3)    XXXX63-605;

(4)    XXXX23-605; and

(5)    XXXX25-605.

*Provided, however*, that after these funds are transferred to the Liquidation Receiver, the Liquidation Receiver shall set aside a reserve for payment of the Dill Defendants' estimated federal and state taxes resulting from the liquidation of these funds; *provided, further*, that the Liquidation Receiver will only transfer those reserved funds to the Dill Defendants for payment of the estimated taxes owed for the year 2016, *provided that* the Dill

Defendants file their tax returns no later than October 16, 2017 and that

within ten (10) days after satisfaction of their 2016 tax obligations, the

Dill Defendants shall assign their rights to receive any tax refunds to the

Liquidation Receiver;

10.    Within thirty (30) days of this Final Order, unless agreed to in writing by

the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the

Liquidation Receiver or such other party as the Liquidation Receiver may

direct, as required by the Liquidation Receiver, all interest in the following

Defined Benefit Plan and retirement accounts held at Morgan Stanley:

(1)    Direct Alternatives Defined Benefit Pension Plan, Anthony &

Staci Dill, Acct. XXXX68-605, which amount(s) Defendants shall,

upon their election and consent, cause to be distributed in lump

sum distribution(s);

(2)    Anthony Dill Roth IRA, Acct. XXXX00-605; and

(3)    Staci Dill Roth IRA, Acct. XXXX08-605.

*Provided, however*, that prior to transferring any funds to the Liquidation

Receiver, Morgan Stanley may withhold any funds necessary for transfer

to the Internal Revenue Service or the Department of Revenue for the

State of Maine, as required by law; *provided, further*, that after the

remaining funds are transferred to the Liquidation Receiver, the

Liquidation Receiver shall set aside a reserve for payment of the Dill

Defendants' 2016 estimated personal tax liability on the distribution

amounts resulting from the liquidation of such accounts, which reserve the

Dill Defendants may utilize to the extent necessary to pay such tax liability, *provided that* the Dill Defendants file their tax returns no later than October 16, 2017, and that within ten (10) days of satisfaction of all 2016 tax obligations, the Dill Defendants shall assign or transfer the right to receive any tax refunds to the Liquidation Receiver;

11.    Within thirty (30) days after the date of this Final Order, unless agreed to in writing by the Liquidation Receiver, convey, sell, assign, or transfer to the Liquidation Receiver or such other party as the Liquidation Receiver may direct:  (i) Direct Alternatives' legal and equitable interests in the Direct Alternatives Defined Benefit Plan (the "Plan"), including all the powers, rights, discretion, and duties of Direct Alternatives in its capacity as the Plan sponsor; and (ii) Defendant Anthony Dill's legal and equitable interests in the Plan as Plan administrator, with all the powers, rights, discretion, and duties of the Plan administrator.

The Liquidation Receiver shall have sole plenary authority and control over the Plan and sole authority to perform the duties of the "Plan Administrator" and "Employer" under the Plan, including:  the authority to collect, marshal, and administer all of the Plan's assets, liquidate the Plan's assets, distribute the Plan's assets, effectuate the termination of the Plan, communicate with Plan participants, coordinate Plan account distributions, make all required governmental filings, identify all claimants of the Plan and pay the amount of benefits owed to such claimants in accordance with the terms of the Plan, and pay service providers, agents,

custodians, investment counsel, accountants and legal counsel in connection with executing the foregoing duties. *Provided, however*, that the Liquidation Receiver shall not be liable for any claim, obligation, liability, action, cause of action, cost or expenses of Defendants or Direct Alternatives (or any member of a "controlled group" or "affiliated service group" under Section 414 the Internal Revenue Code of 1986, as amended, of which Direct Alternatives is a member) arising out of or relating to events or circumstances occurring prior to entry of this Final Order, including without limitation, any contingent or unliquidated obligations or liability to which Defendants or Direct Alternatives may be exposed. *Provided, further*, that if, and to the extent, the Plan is underfunded on a termination basis, Defendant Anthony Dill shall, if required by the Liquidation Receiver and at the sole option and direction of the Liquidation Receiver, execute a waiver of his benefit(s) under the Plan (and Defendant Staci Dill shall execute all required consent(s) to such waiver) to the extent necessary to render the Plan fully funded for all benefit liabilities on a termination basis and ensure that the Plan is eligible for a "standard termination" in accordance with the standards established by the Pension Benefit Guaranty Corporation (PBGC);

12. Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer, to the Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, all CNL Lifestyle

Properties, Inc., stock, including stock held in account number XXXX16605.

*Provided, however*, that after these funds are transferred to the Liquidation Receiver, the Liquidation Receiver shall set aside a reserve for payment of the Dill Defendants' estimated federal and state taxes resulting from the liquidation of these funds; *provided, further*, that the Liquidation Receiver will only transfer those funds to Defendants for payment of taxes owed for the year 2016, *provided that* the Dill Defendants file their tax returns no later than October 16, 2017 and that within ten (10) days after satisfaction of their 2016 tax obligations, the Defendants shall assign their rights to receive any tax refunds to the Liquidation Receiver;

13.    Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver, or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, all of the property described or identified in Defendants' sworn statements listed in Subsection XIII.E., that are assets of Direct Alternatives and Original Organics LLC, including interests in:

(1)    All trademarks, including the trademark for "Original Organics," USPTO Serial No. 77664091 and the trademark for "Acai Fresh," USPTO Serial No. 77664083; and

(2)    All furniture, artwork, computers, multi-media devices, televisions, sound systems, telephones, and other equipment;

14.     Within ten (10) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, all interest in the Direct Alternatives and Natural Options, LLC merchant escrow accounts, including all funds currently being held in the following accounts:

(1)     Power Pay, Accts. XXXX3005, XXXX3788, and XXXX4342;

(2)     Electronic Merchant Systems, Acct. XXXX5562;

(3)     CashFlows, Accts. XXXX1774 and XXXX1431;

(4)     Signature Card Services, Accts. XXXX7110 andXXXX5980;

(5)     Vision Payment Solutions, Accts. XXXX1989 and XXXX7617;

(6)     Humboldt, Acct. XXXX4883; and

(7)     Any other accounts identified to or by the Liquidation Receiver.

*Provided that* Defendants may keep $11,000;

15.     Within ten (10) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, no less than $200,000 currently held in the Defendants' attorney trust account at Venable LLP;

16.     At the direction of the Liquidation Receiver, liquidate, convey, sell, assign, or transfer to the Liquidation Receiver or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver,

all of Defendants' legal and equitable interests in the following companies:

(1)    Novia Products, LLC;

(2)    The Ice Chest;

(3)    Core Logix, LLC;

(4)    Northern Maine Distilling Company; and

(5)    Natural Options, LLC.

*Provided, however*, that Defendants shall be permanently enjoined from reacquiring any interest in such companies or their successors;

17.    Within thirty (30) days of this Final Order, unless agreed to in writing by the Liquidation Receiver, liquidate, convey, sell, assign, endorse or transfer to the Liquidation Receiver, or such other party as the Liquidation Receiver may direct, as required by the Liquidation Receiver, all legal and equitable rights to collect on loans, including any evidence of such loans (e.g., the original promissory notes, if any) made by Defendant Anthony Dill to any person or entity, including The Ice Chest, Corey Frink, and Kevin Boilard;

18.    Promptly, but in no event more than 10 days after receipt of tax refunds, remit or cause to be delivered directly to the Liquidation Receiver, at the Liquidating Receiver's request, all tax refunds resulting from tax filings or amended tax filings by any of the Defendants for the years 2014, 2015, and 2016; and

19.    Cooperate fully with the Liquidation Receiver and execute any instrument or document presented by the Liquidation Receiver, and do whatever else the Liquidation Receiver, in his sole discretion, deems necessary or desirable to transfer all of Defendants' interests in the Receivership Estate and to maximize the value of the Receivership Estate, including Defendants' interests in the companies listed in Subsection XIII.B.16. In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section, or with the Liquidation Receiver, the Liquidation Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Liquidation Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)) to seize the asset, document, or other thing and to deliver it to the Liquidation Receiver;

C.    The Defendants shall deliver to counsel for the Commission and the Maine Attorney General, and the Liquidation Receiver, copies of signed and completed tax returns for the tax year 2016, including all related forms, schedules, statements, and attachments, within ten (10) business days after that return is officially filed.  The Defendants shall also deliver to counsel for the Commission and the Maine Attorney General, and the Liquidation Receiver, copies of signed and completed amended federal and state tax returns for the years 2014, 2015,

and 2016, including all related forms, schedules, statements, and attachments, within ten (10) business days after each such amended return is officially filed.  The Defendants shall also, within thirty (30) days after their final date permitted by the IRS for filing an amended federal tax return for that tax year, sign and submit to the IRS an IRS Form 4506, along with a payment to the IRS of the Form 4506 fee, directing the IRS to send to counsel for the Commission and the Maine Attorney General, and the Liquidation Receiver, a copy of the Defendants' original and amended tax returns filed for 2014, 2015, and 2016;

D.      In the event of default on any obligation to make payments under this Final Order, or to transfer assets to the Receivership Estate, or to such other party as directed by the Liquidation Receiver, as required by Subsection B, above, the entire Judgment amount of $16,419,989.00 shall immediately become due and payable.  Defendants shall be jointly and severally liable for all payments required by this Subsection and any interest on such payments;

E.      Plaintiffs' agreement to the suspension of part of the Judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn deposition testimony, financial statements, and related documents (collectively, "financial representations") submitted to Plaintiffs, namely the following:

1.      Signed and sworn FTC Financial Statement of Individual Defendants and FTC Financial Statement of Corporate Defendants submitted to the Plaintiffs on August 3, 2015, as amended on September 18, 2015;

2.      Attachments to FTC Financial Statement of Individual Defendants and FTC Financial Statement of Corporate Defendants submitted to the Plaintiffs on August 4, 2015 in the form of two CD-ROMs:

      (a)      Disk 1 – Attachments A-I;

      (b)      Disk 2 – Attachments A-F;

3.      September 18, 2015 letter submission from Jeffrey D. Knowles to Plaintiffs, together with one CD-ROM containing Attachments A-QQ;

4.      October 12, 2015 White Paper proposal of settlement from Jeffrey D. Knowles, together with Attachments A-L;

5.      October 16, 2015 letter submission from Jeffrey D. Knowles to Plaintiffs explaining Defendants' investments in various companies, with 2013-2014 Balance Sheets and Profit & Loss Statements for Core Logix, LLC and Northern Maine Distilling Company;

6.      October 20, 2015 letter submission from Jeffrey D. Knowles to Plaintiffs regarding the Dill Defendants' business interests, attaching Balance Sheets and a Profit & Loss Statement for The Ice Chest;

7.      October 26, 2015 letter submission from Roger A. Colaizzi describing the Dill Defendants' three automobiles, providing serial numbers for a boat and two snowmobiles, the location of jewelry, confirming the address of real property, and attaching a June 22, 2015 Demand Letter from VitaQuest International, Inc. and the Dill Defendants' 2014 Federal Tax Return, including all schedules and attachments;

8.      October 28, 2015 Anthony Dill asset deposition, together with all deposition exhibits;

9.      October 29, 2015 letter submission from Roger A. Colaizzi describing the Dill Defendants' real property investments, together with Attachments A & B;

10.     November 4, 2015 letter submission from Jeffrey D. Knowles describing additional valuable personal property, a personal loan, defense of a pending lawsuit, and an automobile lease, together with Attachment A; and

11.     December 4, 2015 letter submission from Roger A. Colaizzi describing the current status of an attorney escrow, merchant escrows, and automobiles retained by the Dills;

F.      The suspension of the Judgment will be lifted as to any Defendant if, upon motion by either of Plaintiffs, the Court finds that such Defendant failed to disclose any material asset or income, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified in Subsection XIII.E, above;

G.      If the suspension of the Judgment is lifted, this Judgment becomes immediately due as to Defendants in the amount specified in Subsection A, above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Final Order;

H.      At such time that the Liquidation Receiver has liquidated all of the Receivership Estate, or 730 days have elapsed from the date of this Final Order without extension of the Liquidation Receiver's appointment, subject to any tax reserves described in Subsection XIII.B. above, this Court shall, upon application by Plaintiffs, Order the Liquidation Receiver to pay

from the Receivership Estate Five Hundred Thousand Dollars ($500,000) to the State of Maine

by electronic fund transfer in accordance with instructions provided by the Maine AG, and to pay

to the Commission all remaining Receivership Estate funds, less tax reserves, which the

Commission may use only for the purposes described in Subsection XIII.I., below.  Upon further

application by Plaintiffs, this Court shall Order the Liquidation Receiver to pay to the

Commission any undistributed tax reserves and tax refunds received by the Receivership Estate,

as provided in Subsection XIII.B.  Such funds may only be applied by the Commission as

provided in Subsection XIII.I.;

      I.      All money paid to the Commission pursuant to this Final Order may be deposited

into a fund administered by the Commission or its designee to be used for equitable relief,

including consumer redress and any attendant expenses for the administration of any redress

fund.  If a representative of the Commission decides that direct redress to consumers is wholly or

partially impracticable or money remains after redress is completed, the Commission may apply

any remaining money for such other equitable relief (including consumer information remedies)

as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any

money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.

Defendants have no right to challenge any actions the Commission or its representatives may

take pursuant to this Subsection;

      J.      All money paid to the State of Maine pursuant to this Final Order shall be

deposited into the Attorney General's other special revenue account and used for consumer

education, consumer protection, antitrust enforcement, or for any lawful purpose at the sole

discretion of the Attorney General;

K.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Final Order and may not seek the return of any assets;

L.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of either of Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary Judgment pursuant to this Final Order, such as a nondischargeability complaint in any bankruptcy case.  The facts alleged in the Complaint establish all elements necessary to sustain an action by either of Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Final Order will have collateral estoppel effect for such purposes; and

M.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Final Order, in accordance with 31 U.S.C. § 7701.

## XIV.

## APPOINTMENT OF LIQUIDATION RECEIVER

**IT IS FURTHER ORDERED** that John C. Turner, of Auburn, Maine, is appointed Liquidation Receiver to serve for 730 days from the date of this Final Order for the purpose of receiving and liquidating the Receivership Estate and maximizing the value of the Receivership Estate to the greatest extent possible, as is compatible with the terms of this Final Order and the best interests of the Receivership Estate with the full powers and protections of an equity receiver.  The Liquidation Receiver shall be the agent of this Court and solely the agent of this Court and is acting as a Liquidation Receiver under this Final Order.  The Liquidation Receiver shall be accountable directly to this Court.  The Liquidation Receiver shall post a bond

acceptable to this Court, which shall remain in full force and effect so long as the Liquidation Receiver serves, conditioned that the Liquidation Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs and comply with all Local Rules of this Court governing receivers.

The Liquidation Receiver and all personnel hired by him as herein authorized, including counsel and accountants for the Liquidation Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Final Order, and for the cost of actual out-of-pocket expenses incurred by them, including costs of any fiduciary liability insurance coverage or bond deemed advisable by the Receiver or required by law, from the Receivership Estate. The Liquidation Receiver shall file with the Court and serve on the respective counsel of record for Plaintiffs and Defendants (collectively the "Notice Parties") periodic requests for the payment of such reasonable compensation for himself and his professionals, with the first such request filed no more than sixty (60) days after the date of this Final Order. The Liquidation Receiver shall not increase his rates, as reflected in EXHIBIT B to this Final Order, without prior approval from this Court.

The Receiver shall periodically, with the first such request filed no more than sixty (60) days after the date of this Final Order, report to this Court regarding: (1) the steps taken by the Liquidation Receiver to implement the terms of this Final Order; (2) the amount received for all liquidated assets of the Receivership Estate; (3) the sum of all liabilities incurred by the Receivership Estate; (4) the steps the Liquidation Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of the Receivership Estate, (b) recover or collect assets belonging to the Receivership Estate from third parties, and (c) adjust the liabilities of the Receivership Estate, if appropriate; and (5) any other matters which the Liquidation Receiver

believes should be brought to the Court's attention. *Provided, however,* if any of the required information would hinder the Liquidation Receiver's ability to pursue assets of the Receivership Estate, the portions of the Liquidation Receiver's report containing such information may be filed under seal and not served on the parties.

## XV.

## DUTIES AND AUTHORITY OF LIQUIDATION RECEIVER

**IT IS FURTHER ORDERED** that the Liquidation Receiver is directed, authorized, and empowered to accomplish the following:

A.      Assume control of the Receivership Estate, and exclude the Defendants, and any person acting on their behalf, from taking or retaining possession and control of any such Receivership Property, to the extent deemed advisable by the Liquidation Receiver;

B.      Conserve, control, possess, hold, direct, and manage all Receivership Estate assets and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to the interests of the Receivership Estate, including obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

C.      Cause to be liquidated and converted into money the entire Receivership Estate, including any and all securities, commodities, stocks, bonds, equity shares, equitable or legal interests in businesses, investment accounts, real property, investments, timeshares, escrow accounts, retirement accounts, insurance policies, real property, furnishings, furniture, appliances, audio and television equipment, snowmobiles, watercrafts, loans due and payable, jewelry, art, and personal property owned by or for the benefit of the Receivership Estate, as the Liquidation Receiver deems to be advisable or necessary;

D.       Enter into, assume, or reject contracts and purchase insurance as the Liquidation Receiver deems to be advisable or necessary;

E.       Choose, engage, and employ attorneys, accountants, appraisers, realtors, and other independent contractors and technical specialists as the Liquidation Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Final Order;

F.       Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by this Final Order and obtain this Court's authorization to incur expenses the Liquidation Receiver deems extraordinary.  Such payment and reimbursement shall conform to EXHIBIT B to this Final Order;

G.       Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Liquidation Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Estate, or that the Liquidation Receiver deems necessary and advisable to carry out the Liquidation Receiver's mandate under this Final Order, and the Liquidation Receiver shall have full and complete discretion in settling or compromising any such proceeding to preserve or recover the assets of the Receivership Estate;

H.       Take depositions and issue subpoenas to obtain documents and records pertaining to the Receivership Estate and to require compliance with this Final Order.  Subpoenas may be served by agents or attorneys of the Liquidation Receiver and by agents of any process server retained by the Liquidation Receiver;

I.      Open one or more bank accounts in the District of Maine as designated depositories for funds of the Receivership Estate.  The Liquidation Receiver shall deposit all funds of the Receivership Estate in such a designated account and shall make all payments and disbursements from the Receivership Estate from such account(s);

J.      Cooperate with reasonable requests for information or assistance from the parties or from any state or federal law enforcement agency;

K.      Keep a true and accurate account of any and all receipts and expenditures and periodically file with this Court a report under oath, accurately identifying all such revenues received and expenditures made, including adequately detailed information concerning income, expenses, payables, and receivables;

L.      File with this Court and serve upon the parties a Final Report that details the steps taken to liquidate the Receivership Estate, including a plan to recover any tax refunds received by Defendants as a result of the liquidation of the Receivership Estate;

M.      Cause any tax returns, federal and state, that are required by law, to be prepared and filed, including obtaining a tax ID number if necessary;

N.      Ensure that all of Defendants remit to the Liquidating Receiver all tax refunds received or that Defendants may receive for the years 2014, 2015, and 2016, including filing liens against those tax refunds, as necessary, or other enforcement mechanisms;

O.      After payment of the Liquidation Receiver's compensation and expenses and upon Order of this Court approving the Final Report, the Liquidation Receiver shall transfer all remaining assets to the Plaintiffs, as provided in Subsection XIII.I.;

P.    Be responsible for oversight of Defendants' treatment of tax losses and gains that result from the liquidation of the Receivership Estate and ensure that tax refunds are properly remitted to the Liquidation Receiver by the Defendants;

Q.    The Liquidation Receiver may seek or request such additional powers or instructions from the Court as he may deem necessary; and

R.    Third Parties shall conclusively rely on this Final Order or the "Notice of Appointment of Liquidating Receiver" attached hereto as EXHIBIT C as sufficient evidence of the Liquidation Receiver's authority to engage in the acts and perform the duties herein, including his authority to convey, transfer, sign, pledge, liquidate, and convey the assets of the Receivership Estate.

## XVI.

## COOPERATION WITH LIQUIDATION RECEIVER

**IT IS FURTHER ORDERED** that:

A.    Defendants, Defendants' officers, agents, personal representatives, employees, and attorneys, and all other persons in active concert or participation with any of them or on their behalf, whether acting directly or indirectly, who receive notice of this Final Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device or entity, or any of them, shall cooperate fully with and assist the Liquidation Receiver in the performance of his duties under this Final Order.  The Defendants' cooperation and assistance shall include:

1.    Providing any information to the Liquidation Receiver or his representatives that the Liquidation Receiver, in his sole discretion, deems necessary or beneficial to exercising the authority and discharging the

responsibilities of the Liquidation Receiver under this Final Order, including allowing the Liquidation Receiver or his representative to inspect or remove assets, and inspect and copy documents;

2.      Providing any user names and passwords and executing any documents required to access any computer or electronic files in any medium, including electronically stored information stored, hosted, or otherwise maintained by an electronic data host;

3.      Executing deeds, liquidating assets, or engaging in other forms of conveyance, sale, and assignment, as required and directed by the Liquidation Receiver, including executing releases, titles, assignments, powers of attorney, and signature authority over other financial assets of the Receivership Estate so that the Liquidation Receiver, or such other parties as the Liquidation Receiver may direct, including asset purchasers, may take legal and equitable possession of the Receivership Estate;

4.      Surrendering, conveying, transferring, or assigning to the Liquidation Receiver, or to such other parties as the Liquidation Receiver may direct, including asset purchasers, all legal and equitable title to the entire Receivership Estate, including securities, commodities, stocks, bonds, equity shares, equitable or legal interests in businesses, investment accounts, real property investments, time shares, escrow accounts, retirement accounts, insurance policies, real property, furnishings, furniture, audio and television equipment, snowmobiles, watercrafts, loans due and payable, and jewelry; and

5.      Until Defendants liquidate, sell, assign, convey, transfer, or surrender possession and legal and equitable title to personal property to the Liquidation Receiver or to such other parties as the Liquidation Receiver may direct, including asset purchasers:

(a)     Defendants shall maintain, and take no action to diminish the value of, the personal property, including any structures, fixtures, and appurtenances thereto, in good working order and in the same condition as on the date of the asset deposition taken on October 28, 2015;

(b)     Defendants shall remain current on all amounts due and payable on the personal property, including tax, insurance, maintenance, and similar fees; and

(c)     Defendants shall cause existing insurance coverage for the personal property to remain in full force until the surrender of possession and legal and equitable title and shall both notify the insurance carrier(s) immediately of the appointment of the Liquidation Receiver and request that the Liquidation Receiver and the Plaintiffs be added to the insurance policy or policies as additional insureds thereunder;

6.      As long as the Dill Defendants occupy the real property, located at 4 Case Road, Rangeley, Maine, Defendants shall maintain, and take no action to diminish the value of, the real property, including any structures, fixtures, and appurtenances thereto, in good working order and in the same

condition as on October 28, 2015, when Defendant Dill gave his sworn

asset deposition;

7.      Until the Dill Defendants transfer possession of the real property located

at 4 Case Road, Rangeley, Maine to the Liquidation Receiver or to such

other party as the Liquidation Receiver directs, including asset purchasers,

together with the furniture, appliances, audio and television equipment

therein, the Dill Defendants shall:

(a)    Remain current on all amounts due and payable on the real

property, including tax, insurance, homeowner's assessments,

reasonable and necessary maintenance, and similar fees;

(b)    Cause existing insurance coverage for the real property to remain

in force until the transfer of possession and shall both notify the

insurance carrier(s) immediately of the appointment of the

Liquidation Receiver and request that the Liquidation Receiver and

the Plaintiffs be added to the insurance policy or policies as

additional insureds thereunder;

(c)    Properly winterize and otherwise protect the real property from

damage from weather or the elements; and

(d)    Properly secure and protect the real property from trespass, theft,

damage, or arson;

8.      Executing all required agreements, filings, forms, or other documents or

consents required to effectuate the orderly termination of the Direct

Alternatives Defined Benefit Pension Plan; and

9.    Nothing in this Final Order requires the Dill Defendants to pay any amount relating to or concerning the above described personal or real property, including any taxes, insurance, homeowner's assessments, maintenance, and similar fees, after the Defendants have vacated and transferred possession and legal and equitable title of the personal and real property to the Liquidation Receiver or to such other party as the Liquidation Receiver directs.

B.    Defendants, Defendants' officers, agents, personal representatives, employees, and attorneys, and all other persons in active concert or participation with any of them or on their behalf, whether acting directly or indirectly, who receive notice of this Final Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device or entity, or any of them, are hereby restrained and enjoined from directly or indirectly:

1.    Transacting any of the business of the Receivership Estate without the express written permission of the Liquidation Receiver;

2.    Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, electronically stored information, or equipment of the Receivership Estate, including contracts and agreements;

3.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Estate, or the Liquidation Receiver;

4.      Excusing debts owed to the Receivership Estate;

5.      Doing any act or refraining from any act whatsoever to interfere with the Liquidation Receiver's taking custody, control, possession, or managing of the assets or documents subject to this Receivership; or to harass or to interfere with the Liquidation Receiver in any way; or to refuse to cooperate with the Liquidation Receiver or the Liquidation Receiver's duly authorized agents in the exercise of their duties or authority under this Final Order; and

6.      Filing, or causing to be filed, any petition on behalf of the Receivership Estate for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

## XVII.

## COOPERATION WITH FTC AND MAINE

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives of the Commission, the Maine AG, and any of their representatives in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendants must provide truthful and complete information, evidence, and testimony.  Individual Defendants must appear and Corporate Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a representative of the Commission or the Maine AG may reasonably request upon five (5) days' written notice, or other reasonable notice, at such places and times as a Commission or Maine AG representative may designate, without the service of a subpoena.

## XVIII.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Final Order, are permanently restrained and enjoined from directly or indirectly:

A.    Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within fourteen (14) days.

B.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Final Order in connection with the labeling, advertising, marketing, distribution, or sale of any formulation of AF Plus or Final Trim; and

C.    Failing to destroy such customer information in all forms in their possession, custody, or control within thirty (30) days after receipt of written direction to do so from representatives of both the Commission and the Maine Attorney General's Office.

*Provided, however,* that customer information need not be destroyed, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

# XIX.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Final Order:

A.    Each Defendant, within seven (7) days of entry of this Final Order, must submit to the Commission and the State of Maine an acknowledgment of receipt of this Final Order sworn under penalty of perjury.

B.    For twenty (20) years after entry of this Final Order, Individual Defendants for any business involved in the sale or marketing of any Covered Product that such Defendants, individually or collectively with Corporate Defendants, are the majority owners or control, directly or indirectly, and each Corporate Defendant, must deliver a copy of this Final Order to:

1.    All principals, officers, directors, and LLC managers and members;

2.    All employees, agents, and representatives who participate in the labeling, advertising, marketing, distribution, or sale of any Covered Product; and

3.    Any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.

Delivery must occur within seven (7) days of entry of this Final Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivered a copy of this Final Order, that Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Final Order.

## XX.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the

Commission and to the Maine AG:

A.    Sixty (60) days after entry of this Final Order, each Defendant must submit a

compliance report, sworn under penalty of perjury:

1.    Each Defendant must:  (a) identify the primary physical, postal, and email

address and telephone number as designated points of contact, which

Plaintiffs' representatives may use to communicate with Defendant; (b)

identify all of that Defendant's businesses by all of their names, telephone

numbers, and physical, postal, email, and Internet addresses;

(c) describe the activities of each business, including the goods and

services offered, the means of advertising, marketing, and sales, and the

involvement of any other Defendant (which Individual Defendants must

describe if he or she knows or should know due to his or her own

involvement); (d) describe in detail whether and how that Defendant is in

compliance with each Section of this Final Order; and (e) provide a copy

of each Order Acknowledgment obtained pursuant to this Final Order,

unless previously submitted to Plaintiffs.

2.    Additionally, Individual Defendants must:  (a) identify all telephone

numbers and all physical, postal, email, and Internet addresses, including

all residences; (b) identify all business activities, including any business

for which such Defendants perform services whether as an employee or

otherwise and any entity in which such Defendants have any ownership interest; and (c) describe in detail such Defendants' involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For twenty (20) years after entry of this Final Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1.    Each Defendant must report any change in:  (a) any designated point of contact; (b) the structure of any Corporate Defendant or any entity that Defendants have any ownership interest in or control directly or indirectly that may affect compliance obligations arising under this Final Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Final Order.

2.    Additionally, Individual Defendants must report any change in: (a) names, including aliases or fictitious names, or residence addresses; (b) titles or roles in any business activity, including any business for which such Defendants perform services whether as an employee or otherwise, and any entity in which such Defendants have any ownership interest, and identify the name, physical address, and any Internet address of the business or entity; or (c) ownership interest, including an interest in or reacquisition of any legal or equitable interest in any of the following companies, their subsidiaries or their successors:

        (a)       Core Logix, LLC;

        (b)       Novia Products, LLC;

        (c)       The Ice Chest;

        (d)       Northern Maine Distilling Company; and

        (e)       Natural Options, LLC.

C.      For a period of twenty (20) years, each Defendant must submit to the Commission and the Maine AG notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within fourteen (14) days of its filing.

D.      Any submission to the Commission or the Maine AG required by this Final Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Final Order must be emailed to DEBrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580. The subject line must begin: *FTC v. Direct Alternatives*, and the number X_____.

F.      Unless otherwise directed by a Maine AG representative in writing, all submissions to the Maine AG pursuant to this Final Order must be sent by overnight courier (not the U.S. Postal Service) to: Office of the Attorney General of Maine, Consumer Protection Division, 111 Sewall Street, 6th Floor, Augusta, ME 04330. The subject line must begin: *Final*

*Order in re State of Maine v. Anthony Dill, Staci Dill, Direct Alternatives and Original Organics LLC* and must identify the Court and docket number of this Final Order as ordered by the Court.

## XXI.

### RECORDKEEPING

**IT IS FURTHER ORDERED** that in connection with the sale of any Covered Product or Service, Defendants must create certain records for twenty (20) years after entry of the Final Order, and retain each such record for eight (8) years.  Specifically, Corporate Defendants and Individual Defendants for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; address; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Complaints and full or partial refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Final Order, including all submissions to the Commission and the Maine AG; and

E.      A copy of each unique advertisement or other marketing material.

## XXII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants'

compliance with this Final Order, including the financial representations upon which part of the

judgment was suspended, and any failure to transfer any assets as required by this Final Order:

A.      Within fourteen (14) days of receipt of a written request from a representative of

the Commission or the Maine AG, each Defendant must:  submit additional compliance reports

or other requested information, which must be sworn under penalty of perjury; appear for

depositions; and produce documents for inspection and copying.  Plaintiffs are also authorized to

obtain discovery, without further leave of court, using any of the procedures prescribed by

Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45,

and 69.

B.      For matters concerning this Final Order, the Plaintiffs are authorized to

communicate directly with each Defendant.  Defendants must permit Plaintiffs' representatives

to interview any employee or other person affiliated with any Defendant who has agreed to such

an interview.  The person interviewed may have counsel present.

C.      Plaintiffs may use all other lawful means, including posing, through their

representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any

individual or entity affiliated with Defendants, without the necessity of identification or prior

notice.  Nothing in this Final Order limits the Commission's lawful use of compulsory process,

pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.  Nothing in this Final

Order limits the Maine AG's lawful use of compulsory process, pursuant to section 211 of the

Maine UTPA, ME. REV. STAT. tit. 5, § 211.  Defendants hereby consent to the disclosure by the

Maine AG to any law enforcement agency, and any representative of the State of Maine, of any material or information produced by Defendants pursuant to section 211 of the Maine UTPA, whether produced before or after the date of this Final Order.

## XXIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Final Order, and jurisdiction is retained by this Court in order to implement and carry out the terms of all orders and decrees that may be entered herein, and to entertain any application or motion by Plaintiffs or the Liquidating Receiver for additional relief pursuant to the provisions of this Final Order.

**IT IS SO ORDERED** this 5th day of February, 2016.

/s/ George Z. Singal
United States District Judge

**IT IS SO STIPULATED** this 19th day of January, 2016

JONATHAN NUECHTERLEIN
General Counsel

/s/ James A. Prunty
James A. Prunty
David P. Frankel
Carolyn L. Hann
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
Telephone: 202-326-2438, 2812, 2745
Facsimile:  202-326-3259
Email:  jprunty@ftc.gov
        dfrankel@ftc.gov
        chann@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

JANET T. MILLS
Attorney General, State of Maine

/s/ Brendan F.X. O'Neil
Brendan F.X. O'Neil
Assistant Attorney General

Office of the Attorney General of Maine
6 State House Station
Augusta, Maine 04333-0006
Telephone: 207-626-8842
Facsimile:  207-624-7730
Email:  brendan.oneil@maine.gov

**IT IS SO STIPULATED** this 9th day of December, 2015

/s/ Anthony Dill
Defendant Anthony Dill, individually, and
on behalf of Defendants Direct Alternatives,
and Original Organics LLC

**IT IS SO STIPULATED** this 9th day of December, 2015

/s/ Staci Dill
Defendant Staci Dill

ATTORNEYS FOR DEFENDANTS


/s/ Jeffrey D. Knowles
Jeffrey D. Knowles, Esq.
Roger A. Colaizzi, Esq.
Kristen R. Klesh, Esq.
Attorneys for Defendants Anthony Dill,
Staci Dill, Direct Alternatives, and
Original Organics LLC

Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004-1601
Telephone: 202-344-4860, 4830
Facsimile:  202-344-8300
Email:  jdknowles@Venable.com